UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RUSSELL IVORY,

       Plaintiff,

vs.                               Case No.  3:06-cv-825-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,[1]

       Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[2]**

      This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

**I.**     **PROCEDURAL HISTORY**

      Plaintiff protectively filed an application for a period of disability and disability insurance benefits ("DIB") on November 20, 2003, alleging an inability to work since April 23, 1999. (Tr. 52).  The Social Security Administration ("SSA") denied this application initially and upon reconsideration. (Tr. 22, 27).  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on March 14, 2006 (Tr. 31, 368-390), at

---

[1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration.  See Rule 25(d)(1), Fed.R.Civ.P.

[2]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 7).

which Plaintiff amended his onset date to September 1, 2003. (Tr. 371).  On May 18, 2006,

the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 11-18).  On July 19, 2006,

Plaintiff filed a Request for Review by the Appeals Council (Tr. 8), and on August 4, 2006,

the Appeals Council denied that request. (Tr. 4-6).  Accordingly, the ALJ's May 18, 2006

decision was the final decision of the Commissioner.  Plaintiff timely filed his Complaint in

the U.S. District Court on September 18, 2006. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since September 1, 2003, due to seizures, migraines,

pain and weakness stemming from lumbar strain, a degenerative disc, tendinitis, and

rheumatoid arthritis. (Tr. 63, 380-383).

### B.    <u>Summary of Evidence Before the ALJ</u>

On the date the ALJ's decision was issued, Plaintiff was thirty years old. (Tr. 16).  He

completed high school in 1996, and later enrolled in vocational school, but dropped out due

to seizures. (Tr. 69).  Plaintiff has past relevant work experience as an ink department

helper, stock clerk, janitor, truck loader, and combat engineer. (Tr. 72).  Plaintiff's medical

history is discussed in the ALJ's decision and will be summarized here.

Plaintiff served in the Army from April of 1996 until April of 1999. (Tr. 367).  According

to Plaintiff, this term of service "ruined [his] life," as it involved, inter alia, carrying heavy

loads on long hikes through mountains, running long distances, and jumping out of a

helicopter into the sea. (Tr.79).  While in the service, Plaintiff claims he was struck by a

baton and knocked unconscious (Tr. 190), and was "knocked unconscious in many different

training routines." (Tr. 79).  Also while still in the service, Plaintiff began suffering from

migraines (Tr. 222), and sought treatment for pain in his knees and back, for which he was

prescribed pain medication. (Tr. 227).  His medical records indicate he began suffering

seizures in December of 1999.[3] (Tr. 224).  Doctors found he had seizure disorder and

degenerative joint disease of the knee bilaterally. (Tr. 223).  They prescribed him medication

to control the seizure disorder, but because of the negative side effects, Plaintiff did not

consistently take the medication. (Tr. 213, 196, 194).  The side effects include drowsiness,

lack of alertness, and difficulty thinking and concentrating. (Tr. 383, 213, 84).  As a result of

his many maladies, Plaintiff also suffered from depression (Tr. 194, 184, 124).

Plaintiff was given two Physical Residual Functional Capacity ("RFC") Assessments -

one on March 24, 2004 and one on August 28, 2004. (Tr. 115-122, 243-250).  The first

assessment found Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift

and/or carry 10 pounds, was able to stand and/or walk for a total of about 6 hours in an 8-

hour workday, was able to sit for a total of about 6 hours in an 8-hour workday, and had no

limitations (other than as shown for lift and/or carry) on his ability to push or pull.  (Tr. 116).

It also found Plaintiff could occasionally balance, occasionally climb ramps/stairs (but not

ladders/ropes/scaffolds), and could frequently stoop, kneel, crouch, and crawl. (Tr. 117).

Plaintiff was found to have no manipulative, visual, communicative, or environmental (other

than "hazards") limitations. (Tr. 118-119).  Under the "symptoms" section of the RFC

Assessment, it was noted that Plaintiff's history of noncompliance with his seizure

---

[3] According to Plaintiff, he began suffering from seizures in 1998 (Tr. 123).  It is unclear if
he simply did not seek treatment until after the December 1999 seizure, if there is a gap in the
medical records, or if Plaintiff's memory is incorrect.

3

medication was part of the problem, and that Plaintiff could increase his ability to function through diet, exercise, smoking cessation, and compliance with his prescribed medications. (Tr. 120).  The second RFC Assessment produced similar results. (Tr. 243-250).

On April 30, 2004, Plaintiff underwent a Psychological Evaluation by Lauren Lucas, Ph. D., and on August 14, 2004, Plaintiff received a Psychiatric Review from Jane Cormier, Ph. D.  Both Lucas and Cormier indicated Plaintiff was suffering from a form of mood disorder, including depression (Tr. 124, 232); however, Cormier indicated Plaintiff's condition was mild (Tr. 239), and Lucas similarly indicated Plaintiff would be capable of functioning in the workplace. (Tr. 124).  Nonetheless, on December 9, 2004, Plaintiff checked himself into Mental Health Resource Center ("MHRC") because of a worsening of his psychotic symptoms (including an increase in auditory hallucinations). (Tr. 251-253). Tests revealed his psychiatric medication was at subtherapeutic levels. (Tr. 253).  According to Plaintiff, he had not taken his psychiatric medication for a few days prior to the incident. (Tr. 334).  A month after being discharged from MHRC, Plaintiff reported doing better, and that the voices were weaker on his medication. (Tr. 328).

### C.   Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of

4

impairments which significantly limit his physical or mental ability to do basic work activities,

then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's

impairments do not prevent him from doing past relevant work, he is not disabled.  20

C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional

capacity, age, education, and past work) prevent him from doing other work that exists in

the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Claimant bears the

burden of persuasion through step four, while at step five, the burden shifts to the

Commissioner.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of

the Act and was insured for benefits through the date of the decision. (Tr. 13).  At step one,

the ALJ found Plaintiff had not engaged in substantial gainful activity at any time relevant to

the ALJ's decision.  (<u>Id</u>.).  At steps two and three, the ALJ held:

> [Plaintiff] has the following severe impairments: a history of
> seizure disorder, and affective disorder and a history of migraine
> headaches (20 CFR 404.1520(c)).

(<u>Id</u>.).  The ALJ further determined Plaintiff's seizure disorder could be controlled through

medication, and Plaintiff's "medication levels were never at therapeutic levels at the times of

his actually 'reported' seizure activities (Exhibits B5F, B9F and B10 F)." (Tr. 13-14).  In

addition, the ALJ found Plaintiff's psychiatric impairments, though severe, were likely

attributed to Plaintiff's illegal marijuana use and that they "would not preclude the

performance of normal routine job tasks on a regular basis." (Tr. 14).  Accordingly, the ALJ

found Plaintiff did "not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I."
(Tr. 14).

The ALJ determined Plaintiff retained the residual functional capacity ("RFC") for light
work activity on a sustained basis. (Id.).  Specifically, the ALJ found Plaintiff should "avoid
ladders or unprotected heights, and concentrated exposure to unusual workplace hazards."
(Id.).  Additionally, the ALJ determined Plaintiff could "occasionally bend, crouch, kneel,
stoop, squat and crawl," could "lift and/or carry 20 pounds occasionally and 10 pounds
frequently," and could "walk/ stand for 6 hours out of an 8-hour day, and sit for 6 hours out
of an 8-hour day." (Id.).  The ALJ considered Plaintiff's mental impairments to equate to no
more than "mild limitations concerning socialization and concerning his ability to maintain
normal concentration on routine job tasks." (Id.).  The ALJ concluded Plaintiff had "no more
than mild to moderate limitations concerning understanding and carrying out detailed
instructions even considering his reported pain and potential side effects from his
medications." (Id.).  In making his findings regarding Plaintiff's RFC, the ALJ found that
Plaintiff's "medically determinable impairments could reasonably be expected to produce the
alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, duration and
limiting effects of these symptoms [were] not entirely credible." (Tr. 15).  The ALJ stressed
the record evidence supporting the proposition that if Plaintiff adheres to his medication
regimen, "his seizure disorder is well-controlled" and his "adjustment disorder is mild." (Tr.
16).  The ALJ found such medical evidence more convincing than Plaintiff's testimony. (Tr.
15-16).

At step four, the ALJ determined Plaintiff no longer retained the ability to perform his
past relevant work and, therefore, proceeded to step five. (Tr. 21).  At step five, the ALJ

determined that based on Plaintiff's age, educational background, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 16). In making this determination, the ALJ utilized the testimony of a vocational expert. Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 17).

## III.  ANALYSIS

### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67

7

F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.  Issues on Appeal

Plaintiff argues one issue on appeal.  Plaintiff received a 90% disability rating from the Department of Veterans Affairs[4] (the "VA"). (Tr. 367).  Plaintiff argues "the [ALJ] erred when he failed to properly address and state what weight he provided to the disability rating found by the [VA]." (Doc. 10, p. 11).  Plaintiff points to "the Commissioner's regulations and applicable legal authority" to support the proposition that "the ALJ was required to state what weight he provided [the] finding by the VA." (Id.).  Defendant counters Plaintiff's assertions with several different arguments.  Defendant argues the ALJ did "consider[] the VA rating and the records from the VA in deciding Plaintiff's claim." (Doc. 11, p. 4).  Additionally, Defendant claims "remand to have the ALJ further discuss the VA rating would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources." (Id. at 10).

According to 20 C.F.R. § 404.1504, a determination of disability by another governmental agency, such as the VA, is not binding on the SSA.  However, this does not mean that such a determination is meaningless.  Eleventh Circuit case law holds a determination of disability by the VA is entitled to great weight, and the ALJ must consider that determination when deciding the case.  Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984) (citing Olson v. Schweiker, 663 F.2d 593 (5th Cir.1981) (citing Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981)).  The SSA itself agrees to a certain extent, as

---

[4] The Department of Veterans Affairs replaced the Veterans Administration on March 15, 1989 - almost 20 years ago.

shown in the recently enacted Social Security Ruling 06-03p: *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*. SSR 06-03p is a clarification of the already existing regulations pertaining to the consideration a determination of disability by another agency should receive. (Doc 10-2, p. 1). SSR 06-03p makes it clear such determinations "must be considered" by the adjudicator, and "the adjudicator should explain the consideration given to these decisions." (Id. at 7). Hence, this Court agrees with Plaintiff that the ALJ was required to consider and discuss Plaintiff's VA disability rating in his decision. The question remains whether Defendant has shown that the ALJ fulfilled this requirement or that failure to fulfill this requirement does not warrant remand.

In asserting the ALJ did "consider[] the VA rating and the records from the VA in deciding Plaintiff's claim" (Doc. 11, p. 5), Defendant in part misses the point. Plaintiff's appeal is not that the ALJ did not consider the VA **record**, but rather, that the ALJ did not apply the proper legal standard in considering the evidence of the VA's **rating**. As the court's footnote in Olson v. Schweiker (stating it was odd the ALJ relied on VA records, but gave little weight to the VA's rating of Plaintiff) indicates, considering the VA records does not equate to applying the requisite legal standard to the VA's rating. 663 F.2d at 597, n.4. Thus, although the ALJ did look to the VA's medical records, his only mention of the VA's rating was a passing comment that Plaintiff "testified that he has a service-connected [VA] disability rating of 100%." (Tr. 15). This statement does not indicate the ALJ gave any weight to the rating. Although this Court will not attempt to define for the Eleventh Circuit what "giving great weight to Plaintiff's VA rating" requires, this Court certainly has no

9

problem in stating it requires more than a passing mention of the rating.  This is especially true when the ALJ bases his decision in part on finding Plaintiff's testimony as to his condition not entirely credible, even though that testimony would seem to be corroborated by the VA's rating of Plaintiff.

Similarly, Defendant's argument that remand would have no practical effect, and would waste resources is equally without merit.  While the Court does not adopt Defendant's view that requiring the ALJ to apply the proper legal standard would be a triumph of form over substance (Doc. 11, p. 11), the Court is by no means suggesting remand will lead to a different outcome.  However, though Defendant offers ample support for the position that remand is not appropriate where it "would be an idle and useless formality," N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766 n. 6 (1969), this Court is of the opinion that remand, nonetheless, is the appropriate action.  This is because the legal theories boding against remand are general and pertain to judicial and administrative economy; however, the principle requiring remand is specifically articulated and pertains to ensuring that Plaintiff's evidence receives proper consideration (a higher purpose than economy).  Thus, the ALJ's failure to accord the proper weight to the VA rating was not a  "technical deficienc[y] in the *crafting* of the opinion" (Doc. 11, p. 11) (quoting Deaton v. Barnhart, No. 02-13594, slip op. at 6 (11th Cir. Feb. 14, 2003) (unpublished) (emphasis added)); rather, it was a substantive deficiency in the forming of the opinion and as such, remand is required.  See generally, Hogard v. Sullivan, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990) (remand necessary where ALJ rejected VA rating because of the different criteria utilized by the SSA).

IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and

**REMANDED**, pursuant to 42 U.S.C. §405(g), for the ALJ to consider the VA disability rating under the proper legal standard, and conduct any further proceedings as are necessary.

**DONE AND ORDERED** at Jacksonville, Florida, this _21st_ day of June, 2007.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record